UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

FRANCISCO PROCEL,

                Debtor,

----------------------------------------------------------------X

FRANCISCO PROCEL,

                Appellant,

      -v-

UNITED STATES TRUSTEE, AURORA LOAN
SERVICES, LLC, and LITTON LOAN
SERVICING, LP, as Servicer for CREDIT BASED
ASSET SERVICING AND SECURITIZATION,
LLC,

                Appellees.

Case No. 10-CV-6418 (KMK)

OPINION AND ORDER

Appearances:

Arvind Kumar Galabya, Esq.
Law Offices of Arvind K. Galabya, P.C.
Brooklyn, New York
*Counsel for Appellant/Debtor*

Linda Riffkin, Esq.
Office of the United States Trustee
New York, New York
*Counsel for Appellee United States Trustee*

Natalie A. Grigg, Esq.
Steven J. Baum, P.C.
Amherst, New York
*Counsel for Appellees Aurora Loan Services, LLC and Litton Loan Servicing, LP, as Servicer for Credit Based Asset Servicing and Securitization, LLC*

KENNETH M. KARAS, District Judge:

Francisco Procel ("Appellant" or "Debtor") appeals from final Orders of the Bankruptcy Court dated June 30, 2010, and July 12, 2010. For the reasons given herein, the judgment of the Bankruptcy Court is vacated in part and affirmed in part, and this case is remanded to the Bankruptcy Court for proceedings consistent with this Opinion.

## I. Background

### A. Facts

On January 7, 2010, Appellant commenced this action by filing a pro se petition ("the Petition") under Chapter 13 of the Bankruptcy Code. (Br. of Appellee United States Trustee ("U.S. Trustee Br.") 2.) In the Petition, Appellant disclosed only one previous bankruptcy filing, filed on January 7, 2008, but failed to provide a case number for this prior petition. (*Id.*; *see also* United States Trustee App. of Docs. Constituting the R. on Appeal ("U.S. Trustee App.") Ex. 1, at 2.) In fact, Appellant had filed three prior bankruptcy cases, each of which had been voluntarily dismissed on Appellant's motion. (U.S. Trustee Br. 2 n.4.)[1] Appellant also failed to file schedules of assets and liabilities, or a statement of financial affairs, which is a requirement under the Bankruptcy Code. *See* 11 U.S.C. § 521(a)(1). Jeffrey L. Sapir was appointed as the Chapter 13 Trustee. (U.S. Trustee Br. 2.)

On February 19, 2010, the Clerk of the Bankruptcy Court scheduled a meeting of creditors, pursuant to 11 U.S.C. § 341(a). (*Id.* at 2-3.) Appellant failed to attend that meeting; however, on the same day, he filed a handwritten letter with the Bankruptcy Court indicating his

---

[1] Appellant's first filing was on May 6, 2008, and this filing was voluntarily dismissed on May 19, 2008. The second filing was on June 11, 2008, and was voluntarily dismissed on June 27, 2008. The third filing was on September 30, 2008, and was voluntarily dismissed on October 16, 2008. (U.S. Trustee Br. 2 n.4; Appellant's Br. 2.)

intent to "to withdraw his case from Chapter 13." (*Id.*; U.S. Trustee App. Ex. 2.)  The

Bankruptcy Court treated Appellant's letter as a motion seeking to dismiss his Chapter 13

petition pursuant to § 1307(b).  (U.S. Trustee Br. 3; No. 10-22021, Dkt. No. 17.)  Appellant's

putative motion was thereafter opposed by several of Appellant's creditors, the United States

Trustee, and the Chapter 13 Trustee.  (U.S. Trustee Br. 3; U.S. Trustee App. Ex. 3-6.)

Additionally, after Appellant filed his motion to dismiss, his name and status as a potential

owner of real property came to the attention of the United States Trustee and several creditors in

connection with a Chapter 11 case that had been filed in the Southern District of New York in

2008.  (*Id.*)  In that case, *In re Halal 4 U LLC*, No. 08-15216, several secured creditors filed

motions seeking to lift the automatic stay.  (*Id.*)  Those motions referred to Appellant,

mentioning the fact that he had recently filed a Chapter 13 petition, and asserting that he was the

current or former owner of real property which Appellant had allegedly transferred to Halal

without providing notice of any transfers to the secured creditors.  (*See* U.S. Trustee App. Ex. 8,

at 6 (describing, in a hearing before the Bankruptcy Court, what is known about Appellant's

relationship to the *Halal* case).)

On March 24, 2010, a hearing was held before the Bankruptcy Court on Appellant's

motion to dismiss.  (U.S. Trustee Br. 4; U.S. Trustee App. Ex. 7.)  The United States Trustee

argued that conversion of Appellant's Chapter 13 case to a Chapter 7 liquidation, pursuant to §

1307(c), would be a better course of action than granting Appellant's § 1307(b) dismissal

motion, because such conversion would allow for an investigation of Appellant's previously

undisclosed assets.  (*Id.*)  The United States Trustee also informed the Bankruptcy Court about

the apparent relationship between the instant case and the *Halal* case, and also about ongoing

discovery relating to potential property transfers by Appellant being undertaken by the United

3

States Trustee in the *Halal* case.  (U.S. Trustee App. Ex. 7, at 5-8.)  The Bankruptcy Court

adjourned the matter to June 23, 2010 to allow the Parties to undertake discovery and to allow

Appellant time to secure counsel, which he did.  (*Id.* at 3-4, 16-18.)  Appellant also was directed

to file his schedules.  (*Id.* at 17-18.)  In the interim, Appellees Aurora Loan Services, LLC

("Aurora") and Litton Loan Servicing, LP, as Servicer for Credit Based Asset Servicing and

Securitization, LLC ("Litton"), filed motions seeking termination of the automatic stay and in

rem relief.  (*See* Br. on Behalf of Appellee Aurora Loan Services, LLC ("Aurora Br.") App. C;

Br. on Behalf of Appellee Litton Loan Servicing, LP, as Servicer for Credit Based Asset

Servicing and Securitization, LLC ("Litton Br.") App. C.)

      At the June 23, 2010 hearing, the Bankruptcy Court granted secured creditors Bayview

Loan Servicing, LLC, Aurora, and Litton relief from the automatic stay provisions of the

Bankruptcy Code, "on [an] in rem basis" — meaning the lift of the stay would apply for two

years regardless of any subsequent actions filed by Appellant — pursuant to 11 U.S.C. § 362(d),

except as the lift pertained to any property involved in the *Halal* case, as separate relief would be

needed to be obtained in that case.  (U.S. Trustee App. Ex. 8, at 28.)  The Bankruptcy Court

based its ruling on the finding that Appellant had engaged in a "scheme to delay, hinder and

defraud creditors," which allows bankruptcy courts to grant such in rem relief under 11 U.S.C. §

362(d)(4).  (*Id.* at 28-30.)  The Bankruptcy Court also granted the United States Trustee's motion

to convert to Chapter 7 under § 1307(c), notwithstanding Appellant's motion to dismiss under §

1307(b), noting Appellant's repeated filings and continued failure to disclose information, and

the many open questions regarding the extent of Appellant's assets and liabilities.  (*Id.* at 30-31.)

On June 30, 2010, the Bankruptcy Court signed the Order converting Appellant's Chapter 13

case to a Chapter 7 case.  (U.S. Trustee App. Ex. 9.)  On July 12, 2010, Orders were signed

granting Aurora's and Litton's motions for in rem relief from the automatic stay.  (Aurora Br.

App. B; Litton Br. App. B.)

B. Procedural History

Appellant filed an Amended Notice of Appeal on August 9, 2010 (Dkt. No. 4), which

presents six issues:

(1) Whether the Bankruptcy Court erred in its decision relying on 11 U.S.C. §
1307(c) by denying the Debtor's absolute right to dismiss the Debtor's Chapter 13
petition.;

(2) Whether the Bankruptcy Court erred by extending the United States Supreme
Court ruling in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007),
in that it deprived the Debtor of his absolute right to dismiss its Chapter 13
petition, under 11 U.S.C. § 1307(b), effectively overturning the Second Circuit
decision *In re Barbieri*, 199 F.3d 616 (2d Cir. 1999);

(3) Whether the Bankruptcy Court erred in finding without an evidentiary
hearing, that the Debtor hindered, delayed and defrauded its Creditors;

(4) Whether the Bankruptcy Court erred in its decision in that it provided
retroactive relief to the detriment of third parties who acted in good faith to the
benefit of the Creditors;

(5) Whether the Bankruptcy Court erred in finding that the current Chapter 13
petition of the Debtor was part of a scheme to delay, hinder and defraud the
moving Creditors in violation of 11 U.S.C. § 362(d)(4)(B); and

(6) Whether the Bankruptcy Court erred by failing to give the appropriate leeway
traditionally granted by the courts to pro se parties.

(Am. Notice of Appeal 2-3.)

II. Discussion

A. Standard of Review

District courts have jurisdiction to review final bankruptcy orders, such as orders to dismiss or convert Chapter 13 bankruptcy cases, under 28 U.S.C. § 158(a)(1).  *See In re Firstcent Shopping Ctr., Inc.*, 141 B.R. 546, 550-51 (S.D.N.Y. 1992); *In re Rebeor*, 89 B.R. 314, 321 (Bankr. N.D.N.Y. 1988).[2]  Pursuant to Bankruptcy Rule 8013, a district court reviews a bankruptcy court's findings of fact for clear error and reviews conclusions of law de novo.  *See* Fed. R. Bankr. P. 8013; *Lubow Machine Co. v. Bayshore Wire Prods. Corp.* (*In re Bayshore Wire Prods. Corp.*), 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, [and] its conclusions of law *de novo* . . . ." (citations omitted)); *Am. Home Assurance Co. v. Enron Natural Gas Mktg. Corp.* (*In re Enron Corp.*), 307 B.R. 372, 378 (S.D.N.Y. 2004) ("A bankruptcy court's conclusions of law are reviewed *de novo* and its findings of fact for clear error.").

Under the clear error standard, "[t]here is a strong presumption in favor of a trial court's findings of fact if supported by substantial evidence," and a reviewing court will not upset a factual finding "unless [it is] left with the definite and firm conviction that a mistake has been made."  *Travellers Int'l A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1574 (2d Cir. 1994) (first alteration in original) (internal quotation marks omitted); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) ("[A] finding is clearly erroneous when although there

_____

[2] The Second Circuit also has held that "[a]n order lifting the automatic stay is final and appealable."  *Pegasus Agency, Inc. v. Grammatikakis* (*In re Pegasus Agency, Inc.*), 101 F.3d 882, 885 (2d Cir. 1996); *see also Banctexas Dallas, N.A. v. Chateaugay Corp.* (*In re Chateaugay Corp.*), 880 F.3d 1509, 1511 (2d Cir. 1989) (noting that courts "have uniformly held an order lifting the automatic stay to be final and appealable").

is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (internal quotation marks omitted)); *Ceraso v. Motiva Enters., LLC*, 326 F.3d 303, 316 (2d Cir. 2003) (stating that an appellate court should not overturn a trial judge's choice "between permissible competing inferences").

 B. Analysis

  1. Section 1307(b) Dismissal and § 1307(c) Conversion

 Appellant contends that the Bankruptcy Court erred when it denied his motion to dismiss his Chapter 13 petition and instead granted the United States Trustee's motion to convert the Chapter 13 petition to a Chapter 7 liquidation.[3]  Section 1307(b) of the Bankruptcy Code provides: "On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter.  Any waiver of the right to dismiss under this subsection is unenforceable."  11 U.S.C. § 1307(b).  The Second Circuit, in *Barbieri v. RAJ Acquisition Corp.* (*In re Barbieri*), 199 F.3d 616 (2d Cir. 1999), construed this provision as providing debtors an absolute right to voluntarily dismiss a Chapter 13 petition, assuming that the conditions stated therein were satisfied.  In finding that the right to dismiss under § 1307(b) was absolute, the court declined to adopt an Eighth Circuit case, *Molitor v. Eidson* (*In re Molitor*), 76 F.3d 218 (8th Cir. 1996), which reached the opposite conclusion on this question.  The *Molitor* court determined that where there is evidence that a debtor has engaged in fraudulent conduct, or has acted with intent to abuse the bankruptcy process, providing such a debtor the benefit of an absolute right to dismiss would defeat the overall

---

 [3] The Court addresses Appellant's first two issues presented for appeal simultaneously in this Section.

purpose of the Bankruptcy Code, which is "to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts." *Molitor*, 76 F.3d at 220.  The *Molitor* court seized on the language contained in 11 U.S.C. § 1307(c), which allows Chapter 13 petitions to be dismissed or converted "for cause," including instances where bankruptcy petitions are filed in bad faith.  *Id*.  The court posited "[t]o allow [plaintiff] to respond to a motion to convert [pursuant to § 1307(c)] by voluntarily dismissing his case with impunity [pursuant to § 1307(b)] would render section 1307(c) a dead letter and open up bankruptcy courts to a myriad of potential abuses."  *Id.*

The Second Circuit in *Barbieri*, however, outlined several reasons why the right to dismiss a Chapter 13 petition under § 1307(b) is absolute.  First, the court noted that §1307(b) contains mandatory, not permissive language, "unambiguously requir[ing] that if a debtor 'at any time' moves to dismiss a case that has not previously been converted, the court 'shall' dismiss the action."  *Barbieri*, 199 F.3d at 619 (quoting 11 U.S.C. § 1307(b)).  In this regard, the *Barbieri* court then compared the mandatory language of § 1307(b) with the permissive language of § 1307(c), which provides that "on request of a party in interest or the United States trustee and after notice and a hearing, a court *may* convert a case under this chapter to a case under chapter 7, or *may* dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause," *id.* at 618 n.3 (emphasis added), and noted that "[w]hen [a statutory] provision uses both 'may' and 'shall,' the normal inference is that each is used in its usual sense — the one act being permissive, the other mandatory," *id.* at 620 (alterations and internal quotation marks omitted).

8

Second, the *Barbieri* court noted that Congress intended Chapter 13 to be a completely voluntary chapter of the Bankruptcy Code, as evidenced by § 303(a), which expressly provides that involuntary cases may only be commenced under either chapters 7 or 11.  *See id.*  Because § 303 provides a mechanism through which involuntary petitions may be commenced, and contains a number of requirements that must be satisfied by creditors in order to be invoked, the *Barbieri* court determined that to allow a creditor to convert a voluntary Chapter 13 case into an involuntary Chapter 7 liquidation where a debtor has filed a motion to dismiss would "permit the creditor to effectuate an involuntary petition without the need to satisfy the requisites of § 303," and that "[s]uch a result flies in the face of the voluntary nature of Chapter 13 and circumvents the standards for an involuntary liquidation set forth in § 303."  *Id.* (alteration and internal quotation marks omitted).

Third, the *Barbieri* court did not share the concern expressed in *Molitor* that an absolute right to dismiss under § 1307(b) would render § 1307(c) a "dead letter," noting that to the extent the two provisions are in tension with one another, "one subsection will inevitably prevail at the expense of the other."  *Id.* (alteration omitted) (internal quotation marks omitted).  Indeed, the *Barbieri* court suggested that the same argument could be made that a reading of § 1307(c) that precludes an absolute right to dismiss could render § 1307(b) a nullity.  Finally, the *Barbieri* court also dismissed the *Molitor* court's concern with abuses of the bankruptcy process, because such concerns could not "license [the court] to redraft the statute."  *Id.* at 621.  Notwithstanding the equitable powers granted to bankruptcy courts through 11 U.S.C. § 105(a), the court was not

"authorize[d] . . . to disregard the plain language of § 1307(b)." *Id.*[4] And in any event, the *Barbieri* court noted, there are sufficient mechanisms in place within the Bankruptcy Code to prevent abuses of the bankruptcy process, even where the debtor's right to dismiss under § 1307(b) is considered absolute. *See id.* at 621-22 & n.8 (describing sanctions available under Fed. R. Bankr. P. 9011(c), a debtor's loss of protections emanating from the automatic stay after dismissal, the availability of involuntary petitions pursuant to § 303 and of criminal prosecution pursuant to 18 U.S.C. §§ 151-57, and the apparent ability of bankruptcy courts to grant motions to dismiss with conditions on future filings where bad faith may be present).

Some courts have questioned the viability of *Barbieri* in the wake of the Supreme Court's decision in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007). *Marrama* involved a debtor in a Chapter 7 liquidation who moved to convert his case to one under Chapter 13, pursuant to 11 U.S.C. § 706(a). The debtor's motion, however, was opposed by a trustee of the debtor's estate and the debtor's principal creditor. The Supreme Court held that while "some courts have suggested that even a bad-faith debtor has an absolute right to convert at least one Chapter 7 proceeding into a Chapter 13 case," 549 U.S. at 368, the lower courts in that action "correctly held that [the debtor] forfeited his right to proceed under Chapter 13" because of bad-faith conduct, *id.* at 371.

---

[4] 11 U.S.C. § 105(a) provides: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

The governing provisions of the Bankruptcy Code in *Marrama* were 11 U.S.C. §§ 706(a) and (d), which provide:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title.  Any waiver of the right to convert a case under this subsection is unenforceable.

> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

In *Marrama*, the Supreme Court noted that some lower courts had relied on the Senate Report discussion of subsection (a), which stated that the subsection "gives the debtor the one-time absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case," to support the existence of an unqualified conversion right.  549 U.S. at 371.  The Court referred to this language as "equivocal," and further noted that there are clear limitations on a debtor's right to convert under § 706(a), such as the express limitation contained in § 706(d) — namely, that in order to convert from Chapter 7 to Chapter 13 under § 706(a), a debtor must qualify under Chapter 13.  *Id.* at 372.  In turn, to qualify as a debtor under Chapter 13, a debtor must not have engaged in any bad-faith conduct, otherwise the debtor's Chapter 13 petition may be dismissed or converted to a Chapter 7 proceeding "for cause" pursuant to § 1307(c).  *Id.* at 373.  In essence, the Supreme Court concluded, "a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct . . . is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13."  *Id.* at 373-74.  Therefore, the Supreme Court held that the text of § 706(d) was sufficient to preclude a Chapter 7 debtor — who had engaged in bad-faith conduct prior to attempting to convert to

Chapter 13 under § 706(a) — from converting to Chapter 13. *Id.* at 374. The Supreme Court further held that the statement in § 706(a) that "[a]ny waiver of the right to convert a case under this subsection is unenforceable" does not bar a debtor's *forfeiture* of the conversion right through fraudulent conduct, and that § 105(a) of the Bankruptcy Code, which allows bankruptcy courts to take any necessary or appropriate action "to prevent an abuse of process," provides adequate authority for bankruptcy courts to deny motions filed under § 706(a) instead of the less efficient alternative of granting conversion, only to dismiss or re-convert the Chapter 13 petition "for cause" under § 1307(c), which also could lead to further potential abuses by the debtor. *Id.* at 374-75 & n.13.

Following *Marrama*, lower courts have been split on whether a debtor's voluntary dismissal right under § 1307(b) is absolute. *Compare In re Williams*, 435 B.R. 552, 555 (Bankr. N.D. Ill. 2010) (noting that "most reported decisions have held that Chapter 13 debtors have an absolute right to dismissal of an unconverted case" (collecting cases)); *In re Hamlin*, No. 09-05272-8, 2010 WL 749809, at *4 (Bankr. E.D.N.C. Mar. 1, 2010) (finding that right to dismiss is absolute); *In re Sickel*, No. 08-00309, 2008 WL 5076981, at *1 (Bankr. D.D.C. Sept. 26, 2008) (same); *In re Polly*, 392 B.R. 236, 248 (Bankr. N.D. Tex. 2008) (same); *In re Campbell*, No. 07-457, 2007 WL 4553596, at *1 (Bankr. N.D. W. Va. Dec. 18, 2007) (same); *In re Hughes*, No. 04-40725, 2007 WL 7025843, at *3 (Bankr. S.D. Ga. Nov. 30, 2007) (same); *In re Davis*, No. 06-1005, 2007 WL 1468681, at *2 (Bankr. M.D. Fla. May 16, 2007) (same), *with Jacobsen v. Moser* (*In re Jacobsen*), 609 F.3d 647, 660 (5th Cir. 2010) (finding no absolute right to dismiss); *Rosson v. Fitzgerald* (*In re Rosson*), 545 F.3d 764, 774 (9th Cir. 2008) (same); *In re Caola*, 422 B.R. 13, 20 (Bankr. D.N.J. 2010) (same); *In re Armstrong*, 408 B.R. 559, 569 (Bankr. E.D.N.Y.

2009) (same); *In re Norsworthy*, No. 05-15098, 2009 WL 6499238, at *1 (Bankr. N.D. Ga. May 27, 2009) (same); *In re Chabot*, 411 B.R. 685, 700 (Bankr. D. Mont. 2009) (same); *In re Letterese*, 397 B.R. 507, 512 (Bankr. S.D. Fla. 2008).

The Ninth Circuit's reasoning in *Rosson* is typical of the courts finding no absolute right to dismiss under § 1307(b). In holding that the "'absolute right' position" was no longer tenable after *Marrama*, the court relied on a previous case decided by the Ninth Circuit's Bankruptcy Appellate Panel ("BAP"), *In re Croston*, 313 B.R. 447 (9th Cir. BAP 2004), *abrogated by Marrama*, 549 U.S. 365, which "recognized" that the question of whether a bad-faith debtor has an absolute right to convert his Chapter 7 case into a Chapter 13 case under § 706(a) is "analytically indistinguishable" from the question of whether a debtor has an absolute right to voluntarily dismiss his Chapter 13 petition under § 1307(b). *Rosson*, 545 F.3d at 772-73 (citing *Croston*, 313 B.R. at 451). The *Croston* court, in turn, relied on another BAP case — *In re Beatty*, 162 B.R. 853 (9th Cir. BAP 1994), which held that the right to dismiss under § 1307(b) is absolute and therefore held that the right to convert from Chapter 7 to Chapter 13 under § 706(a) must also be absolute. This latter position was, of course, directly rejected by *Marrama*. The Ninth Circuit, therefore — accepting the *Croston* court's conclusion that no analytical distinction existed between the legal issues in *Croston* and *Beatty* — held that *Marrama* rejected with equal force any notion that a debtor has an absolute right of voluntary dismissal under § 1307(b), and that any such right of dismissal "is qualified by the authority of a bankruptcy court to deny dismissal on grounds of bad-faith conduct or to prevent an abuse of process." *Rosson*, 545 F.3d at 773-74 (internal quotation marks omitted); *see also Jacobsen*, 609 F.3d at 660

(following the Ninth Circuit's approach in *Rosson* and finding no absolute right of voluntary dismissal).

Although *Barbieri* was not explicitly overruled by *Marrama*, the bankruptcy court in the Eastern District of New York, adopting the Ninth Circuit's reasoning in *Rosson*, concluded that *Barbieri* had been abrogated by *Marrama* (and by recent amendments to section 1307 of the Bankruptcy Code), and that the Second Circuit's conclusion that § 1307(b) affords an absolute right of voluntary dismissal to debtors is no longer good law. *See In re Armstrong*, 408 B.R. at 560. The *Armstrong* court discussed several reasons in support of its position. First, *Marrama* recognized that § 105(a) of the Bankruptcy Code provides broad authority for bankruptcy courts to prevent abuses of process, and that authority should reasonably include the discretion to determine the circumstances in which justice would be better served by enforcing § 1307(c) over § 1307(b). *See id.* at 570. Second, merely because Chapter 13 is supposed to be voluntary in nature should not mean that "a chapter 13 debtor can abuse the bankruptcy process and *not* be held accountable," and bankruptcy courts should be allowed to avail themselves of "the full breadth of the Bankruptcy Code to ensure the integrity of the process." *Id.* at 570-71 (emphasis in original). Third, the Supreme Court's determination that the anti-waiver provision in § 706(a) did not bar forfeiture of the conversion right through bad-faith conduct should be equally applicable to § 1307(b), which contains an almost-identical anti-waiver provision. *See id.* at 571. Fourth, the use of the phrase "at any time" in § 706(a) did not persuade the Supreme Court that that section afforded an absolute right, and so the Second Circuit's reliance on such language in § 1307(b) in *Barbieri* is now unavailing. *See id.* at 572. Finally, the addition of

§ 1307(e) to the Bankruptcy Code,[5] which contains the same mandatory language of § 1307(b), necessarily leads to the conclusion that the right to dismiss under the latter provision cannot be absolute, as competing motions to dismiss under both sections would no longer be able to be resolved through the reasoning of *Barbieri* and there could be instances where an "absolute" right to dismiss under § 1307(b) could be trumped. *See id.*

Notwithstanding the *Armstrong* court's scholarly analysis of this issue, the Second Circuit has not overruled *Barbieri*, and thus it constitutes binding precedent that this Court must follow. *See Piazza v. Fl. Union Free Sch. Dist.*, 777 F. Supp. 2d 669, 680 n.7 (S.D.N.Y. 2011) (noting that the district court "is bound by existing Second Circuit precedent unless and until that precedent is overruled"); *Boyd v. AWB Ltd.*, 544 F. Supp. 2d 236, 243 n.6 (S.D.N.Y. 2008) ("[T]his Court is . . . bound by the Second Circuit's decisions until such time as they are directly overruled by that court or the Supreme Court."); *see also Vega v. Walsh*, No. 06-CV-6492, 2010 WL 1685819, at *9 n.8 (E.D.N.Y. Apr. 22, 2010) (declining to find that a Supreme Court decision had abrogated a controlling Second Circuit decision, even though they were "probably irreconcilable," and ruling that it "must nevertheless apply [the Second Circuit precedent] unless and until a higher court explicitly reaches that same conclusion").

Beyond this, the Court addresses two of the arguments made by the Ninth Circuit in *Rosson*, and which were elaborated upon in *Armstrong*. First, *Rosson* accepted, without any substantial explanation, the *Croston* court's position that because the anti-waiver language of

---

[5] 11 U.S.C. § 1307(e) provides: "[u]pon the failure of the debtor to file a tax return under § 1308, on request of a party in interest or the United States trustee and after notice and a hearing, the court shall dismiss a case or convert a case under this chapter to a case under chapter 7 of this title, whichever is in the best interest of the creditors and the estate."

§§ 706(a) and 1307(b) is identical, "it follows that the analysis of the absolute nature of § 1307(b) applies to the same question under § 706(a)." *Croston*, 313 B.R. at 451.  However, the Supreme Court's discussion of the anti-waiver provision in § 706(a) in *Marrama* indicated only that waiver and forfeiture were distinct concepts, and that the right to convert could be forfeited through bad-faith conduct, which, under § 1307(c), would disqualify a debtor from seeking relief under Chapter 13.  The forfeiture discussion in *Marrama* was explicitly tied to § 1307(c), as the case involved an application to convert from Chapter 7 to Chapter 13, and the Supreme Court gave no indication that the same analysis could or should be applied to a motion to voluntarily dismiss under § 1307(b).  Thus, although *Armstrong* is correct to note that "an anti-waiver provision which is generally intended to protect otherwise inviolable rights of a debtor does not mean that those rights cannot be forfeited by the atypical debtor who engages in fraudulent conduct during the bankruptcy case," *Armstrong*, 408 B.R. at 571 (internal quotation marks omitted), the Supreme Court's discussion of such forfeiture in *Marrama* related only to the interplay between §§ 706(a) and 1307(c), not to § 1307(b).  And, in any event, there are other significant differences between §§ 706(a) and 1307(b).  Section 706(a) is further limited by § 706(d), which prohibits conversion of Chapter 7 cases to cases under other chapters unless the debtor may qualify as a debtor under those chapters.  Section 1307(b), on the other hand, contains no analogous limitation.  *See In re Williams*, 435 B.R. at 557-58 (noting that the "eligibility limitation in § 706(d) was central to *Marrama's* reasoning" and that the absence of such a provision limiting § 1307(b) argues against restricting a debtor's right to dismiss).

Second, *Rosson* noted that the use of permissive versus mandatory language in the two provisions is not dispositive, but rather that "the important point established by *Marrama* is that

even otherwise unqualified rights in the debtor are subject to limitation by the bankruptcy court's power under § 105(a) to police bad faith and abuse of process." *Rosson*, 545 F.3d at 773 n.12. However, as the Second Circuit explicitly noted in *Barbieri*, "although § 105(a) grants a Bankruptcy Court broad powers, it does not authorize the Court to disregard the plain language of § 1307(b)." *Barbieri*, 199 F.3d at 621.  *Armstrong* attempted to discredit the *Barbieri* court's discussion of § 105(a), asserting that *Marrama* "took a much more expansive view" of the authority granted under the section, and that *Barbieri* "removes any discretion from the bankruptcy court to prevent abuse of the bankruptcy process in the chapter 13 context." *Armstrong*, 408 B.R. at 570.  This Court respectfully disagrees, because *Barbieri* outlines numerous sanctions and other remedies that bankruptcy courts have the discretion to apply in order to prevent abuses of the bankruptcy process.  *See Barbieri*, 199 F.3d at 621-22 (discussing the myriad of other protections available to prevent against abuse of process even where the right to voluntarily dismiss is considered absolute); *see also Solow v. Kalikow* (*In re Kalikow*), 602 F.3d 82, 97 (2d Cir. 2010) ("[T]he equitable power conferred on a bankruptcy court by 11 U.S.C. § 105 is the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise do the right thing.  This limitation suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective." (emphasis in original) (citation and internal quotation marks omitted)); *In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004) ("[T]he power conferred by § 105(a) is one to implement rather than override."); *In re Williams*, 435 B.R. at 560 (noting that *Marrama* invoked § 105(a) merely to implement the limitation on § 706(a) contained in § 706(d)).

The *Armstrong* court's other arguments are similarly unavailing.  For example, the *Armstrong* court found that the notion of Chapter 13 as a purely voluntary chapter of the Bankruptcy Code "has been extended far beyond its intended meaning," and that "there is no indication in the legislative history to support the notion that a chapter 13 debtor can abuse the bankruptcy process and *not* be held accountable."  408 B.R. at 570-71 (emphasis in original).  However, it was precisely this view of Chapter 13 that the Second Circuit adopted in *Barbieri*, as was the view that there are ample remedies under the Bankruptcy Code for abusive conduct.  Further, *Armstrong*'s discussion of mandatory language in § 1307(b) and the significance of § 1307(e) are unpersuasive.  *Armstrong* is correct that the Supreme Court was not persuaded "that the language of section 706(a) which allows a debtor to convert 'at any time' should lead to the conclusion that the right to convert is absolute."  408 B.R. at 572.  However, the Second Circuit's analysis in *Barbieri* was based on more than the fact that § 1307(b) contains the phrase "at any time."  The more important language cited in *Barbieri* is that on the request of a debtor, "the court *shall* dismiss" the case.  Indeed, it was this language that led the Second Circuit to conclude that § 1307(b) trumps § 1307(c).  *See Barbieri*, 199 F.3d at 619-20.  Thus, while *Armstrong* is correct that there could be circumstances where the requirements of §§ 1307(b) and 1307(e) might directly conflict, and such conflict would not be able to be resolved by resorting to a determination of which provision is mandatory and which is not, as they both contain mandatory language, that conflict does not change the analysis adopted in *Barbieri*.  Just as § 1307(c) placed certain conditions on the right to dismiss, so too might § 1307(e), such as where

the debtor has failed to file a certain tax return.[6]  In any event, the question before the Court is not whether the absolute right to voluntary dismissal under § 1307(b) that was recognized in *Barbieri* has been limited in any way by § 1307(e), but whether it still exists as otherwise recognized in that case, and the Court concludes that while § 1307(e) may interact in as-of-yet unforeseen ways with § 1307(b), it does not affect the interaction between §§ 1307(b) and 1307(c) as described in *Barbieri*.

In the end, regardless of how §§ 1307(b) and 1307(e) interact, or how the grant of authority in § 105(a) should be interpreted post-*Marrama*, to the extent that *Armstrong* and other courts have held that *Marrama* means the end of *Barbieri*, the Second Circuit has not embraced that view and therefore this Court is bound by the holding in *Barbieri* that the right of voluntary dismissal under § 1307(b) is absolute.  *Marrama* only held, after analyzing the interplay among §§ 706(a), 706(d), and 1307(c), that a debtor who has engaged in prepetition bad-faith conduct does not have an absolute right to convert from Chapter 7 to Chapter 13, because such a debtor would be disqualified from Chapter 13 relief under § 1307(c), which provides for conversion back to Chapter 7 or dismissal "for cause."  *Marrama* was silent as to the absolute right to voluntarily dismiss under § 1307(b), and thus is arguably reconcilable with *Barbieri*.  *See Hamlin*, 2010 WL 749809, at *3 n.3 (disagreeing with the *Armstrong* court's notion that

---

[6] Notably, unlike many of the cases cited in this Opinion, Appellant's motion to voluntarily dismiss under § 1307(b) in the instant action was filed *before* the competing request for conversion under § 1307(c) was made by the United States Trustee.  *See Jacobsen*, 609 F.3d at 660 n.15 ("This case does not call for us to determine whether a bankruptcy court possesses such discretion [to deny a § 1307(b) motion to dismiss and grant a § 1307(c) motion to convert] when the debtor's request for dismissal precedes the motion to convert.  We therefore leave that issue for a later case.").

*Marrama* abrogated *Barbieri*, and noting that "the Second Circuit has not overruled *Barbieri*, and there is certainly room for argument that *Marrama* does not require the court to disregard the reasoning and conclusion in *Barbieri*").[7]  Therefore, the Bankruptcy Court's Order converting Appellant's Chapter 13 petition to a Chapter 7 liquidation is remanded.[8]

### 2. In Rem Relief from the Automatic Stay

Next, the Court addresses Appellant's third, fifth, and sixth issues on appeal — whether the Bankruptcy Court properly found that Appellant engaged in a scheme to hinder, delay and defraud his creditors, and whether the Bankruptcy Court provided enough leeway to Appellant given that he was, at least at certain times, proceeding pro se.  Appellant argues that the Bankruptcy Court's Orders granting in rem relief to several of Appellant's secured creditors should be vacated because the Bankruptcy Court determined, without an evidentiary hearing, that Appellant had engaged in a scheme to delay, hinder, and defraud his creditors, and that in any event the Bankruptcy Court's determination that the instant Chapter 13 petition was part of such a scheme was erroneous.  Both of these arguments are without merit.

As to whether the Bankruptcy Court's determination was correct, the Court reviews such determinations of fact for clear error, *see Bayshore Wire Prods. Corp.*, 200 F.3d at 103, and finds that the Bankruptcy Court's determination was not clearly erroneous.  Indeed, no evidentiary hearing was necessary for the Bankruptcy Court to make this determination, as

---

[7] Notably, Appellee United States Trustee substantially agrees with this position.  (*See* U.S. Trustee Br. 7-11.)

[8] This ruling renders moot Appellant's fourth issue on appeal — that the Bankruptcy Court's decision to convert from Chapter 13 to Chapter 7 had a negative impact on third parties who were involved in previous transfers of Debtor's property to other entities.  (*See* Appellant's Br. 10-11.)

bankruptcy courts may "infer an intent to hinder, delay, and defraud creditors from the fact of serial filings alone." *In re Blair*, No. 09-76150, 2009 WL 5203738, at *4-5 (Bankr. E.D.N.Y. Dec. 21, 2009) (granting in rem relief based on permissible inference of intent to hinder, delay, and defraud, and noting that factors weighing in favor of granting such relief are whether a debtor has sought to file and confirm a payment plan or has prosecuted his case to any meaningful extent); *see also In re Montalvo*, 416 B.R. 381, 387-88 (Bankr. E.D.N.Y. 2009) (granting in rem relief in similar circumstances).  Here, during the June 23, 2010 hearing, the Bankruptcy Court heard from Appellant's counsel, who conceded that Appellant played some role in various property transfers some time in 2008, which were made without notice to or consent of Appellees.  (U.S. Trustee App. Ex. 8, at 15.)  This, combined with the numerous bankruptcy filings by Appellant and his brother, David Procel (*see* Litton Br. 1-4; U.S. Trustee App. Ex. 8, at 28-29), each of which was voluntarily dismissed very soon after filing, was sufficient grounds for the Bankruptcy Court to find that the instant petition was part of a scheme to delay, hinder, and defraud Appellees, notwithstanding Appellant's counsel's claim that the instant petition was brought solely to avoid the loss of certain property in Florida, (U.S. Trustee App. Ex. 8, at 15).[9]  Therefore, the Court affirms the Bankruptcy Court's Orders granting in rem relief to Appellees Aurora and Litton, and remands the case to allow the Bankruptcy Court to

---

[9] There also is no evidence that the Bankruptcy Court did not afford Appellant sufficient leeway during the period of time when he was appearing pro se.  Appellant's counsel stated to the Bankruptcy Court at the June 23, 2010 hearing that he had delivered requested documents to the United States Trustee just days before the hearing.  (U.S. Trustee App. Ex. 8, at 17.)  He argues that the Bankruptcy Court was wrong to take "[Appellant] to task for his slow response to [sic] providing documents and fulfilling the United States Trustee's requests."  (Appellant's Br. 13.)  However, there is no evidence that the delay in providing this documentation to the United States Trustee factored into the Bankruptcy Court's determination in any way.

determine what other sanctions or conditions to impose in relation to Appellant's § 1307(b) dismissal, if any. *See, e.g., Hamlin*, 2010 WL 749809, at *4 (noting that dismissals under § 1307(b) may be granted with conditions, and that such conditions "do[] not contravene the debtor's absolute right to dismiss"); *Montalvo*, 416 B.R. at 388-39 (noting that bankruptcy courts have authority to dismiss cases with prejudice for extended periods of time).

<u>III. Conclusion</u>

For the reasons given herein, the judgment of the Bankruptcy Court is vacated in part and affirmed in part, and this case is remanded to the Bankruptcy Court for proceedings consistent with this Opinion. The Clerk of the Court is respectfully requested to close this case.

SO ORDERED.

Dated:  White Plains, New York
        March 14, 2012

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

22

Service List (by ECF):

Arvind Kumar Galabya, Esq.
Law Offices of Arvind K. Galabya, P.C.
1131 Sutter Avenue
Brooklyn, NY 11208
(347) 663-7736
Fax: (347) 663-7737
Email: arvinesq@aol.com
*Counsel for Appellant/Debtor*

Linda Riffkin, Esq.
Assistant United States Trustee
Office of the United States Trustee, United States Department of Justice
33 Whitehall Street, 21st Floor
New York, NY 10004
(212) 510-0500
*Counsel for Appellee United States Trustee*

Natalie A. Grigg, Esq.
Steven J. Baum, P.C.
220 Northpointe Parkway, Suite G
Amherst, NY 14228
(716) 204-2400
Fax: (716) 204-4612
Email: natalie-grigg@mbaum.com
*Counsel for Appellees Aurora Loan Services, LLC and Litton Loan Servicing, LP, as Servicer for Credit Based Asset Servicing and Securitization, LLC*